# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BORIS NICHOLS AND TONNIE SMITH
NICHOLS,

       **Plaintiffs,**

vs.                                       Case No. 2:19-mc-00162-KS-MTP

U.S. BANK, NATIONAL ASSOCIATION
AND FIRST MORTGAGE, LLC,

       **Defendants.**

## DECLARATION OF ROZALYNN L. MARTIN

    1.     My name is Rozalynn L. Martin. I am of sound mind and capable of making this unsworn declaration in accordance with 28 U.S.C. § 1746. I am over the age of twenty-one (21) years and have never been convicted of a felony or crime involving dishonesty. I am fully competent to testify to the matters herein. I have personal knowledge of the facts stated herein, which are true and correct.

    2.     I am currently an Officer for U.S. Bank National Association ("U.S. Bank"). I am fully authorized to make this declaration on behalf of U.S. Bank in the above-entitled and numbered case. I have personal knowledge of the facts set forth in this declaration based upon my duties for U.S. Bank, my review of U.S. Bank's business records, and my familiarity with the business practices, recordkeeping practices, and servicing practices of U.S. Bank.

    3.     Plaintiffs Boris Nichols and Tonnie Nichols ("Plaintiffs") executed a Note (the "Note") dated October 8, 2008, in the principal amount of $114,138 made payable to First Mortgage Company LLC, and Oklahoma Limited Liability Co. ("First Mortgage"). A true and

correct redacted copy of the Note is attached hereto as **Exhibit A-1**, and is incorporated herein by reference.

4. Plaintiffs also executed a Mortgage (the "Mortgage") dated October 8, 2008, which granted a security interest in the real property located at 8562 East 32nd Street, Tulsa, OK 74145 (the "Property") to secure repayment of the Note. A true and correct redacted copy of the Mortgage is attached hereto as **Exhibit A-2**, and is incorporated herein by reference. The Note and Mortgage are collectively referred to herein as the "Loan."

5. The Mortgage was assigned to U.S. Bank on January 18, 2013 (the "Assignment"). A true and correct copy of the Assignment is attached hereto as **Exhibit A-3**, and is incorporated herein by reference. The Note is endorsed to U.S. Bank, which in turn endorsed the Note in blank. *See* Ex. A-1.

6. U.S. Bank has not entered into any arbitration agreement or agreement with an arbitration clause with Plaintiffs Boris and Tonnie Nichols allowing them to submit any claims they have against U.S. Bank to arbitration.

7. The exhibits attached hereto are records either kept by U.S. Bank in the regular course of business and made at or near the time of the acts, events, conditions and/or opinions recorded therein by an employee or representative of U.S. Bank with knowledge of those matters, documents received from third parties that have been incorporated into and are now a part of the business records of U.S. Bank with respect to the Loan, and/or are self-authenticating documents. It is the regular business practice of U.S. Bank for an employee or representative with knowledge of the acts, events, conditions and/or opinions recorded in these records to record or transmit the information included in these records and/or receive and incorporate them as business records of U.S. Bank related to the Loan. The exhibits attached hereto are either the originals or exact

duplicates of the originals, with the exception that some of the documents have been redacted to exclude portions of the Loan number and/or other information for purposes of confidentiality.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of November, 2019.

_____
Rozalynn L. Martin, Officer

DECLARATION OF ROZALYNN L. MARTIN    PAGE 3

State of Kentucky
County of Daviess

The foregoing instrument was acknowledged, subscribed, and sworn to before me this ⌒|⌒ day of November, 2019, by Rozalynn L. Martin as Officer of U.S. Bank National Association, a federally chartered banking association, on behalf of U.S. Bank National Association.

_____
(signature of notary)

State at Large
(title or rank)

612757
(serial number, if any)

OFFICIAL SEAL
DUSTIN L. REESMAN
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 11-27-2022
ID # 612757

# **EXHIBIT A-1**

FHA Case No. REDACTED

October 8, 2008
[Date]

**NOTE**

Min

8562 East 32nd Street Tulsa, OK 74145
[Property Address]

1. **PARTIES**

   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **First Mortgage Company LLC, an Oklahoma Limited Liability Co.**

   and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

   In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Fourteen Thousand One Hundred Thirty Eight and 00/100** Dollars (U.S. $ **114,138.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and 670/1000** percent ( **6.670** %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated that same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**

   (A) Time

   Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **December 1st**, **2008**. Any principal and interest remaining on the **1st** day of **November**, **2038**, will be due on that date, which is called the "Maturity Date".

   (B) Place

   Payment shall be made at **6501 North Broadway Ste. 250 Oklahoma City, OK 73116**

   _____ or at such other place as Lender may designate in writing by notice to Borrower.

   (C) Amount

   Each monthly payment of principal and interest will be in the amount of U.S. $ **734.24** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

   (D) Allonge to this Note for payment adjustments

   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

   [Check applicable box.]
   ☐ Growing Equity Allonge     ☐ Graduated Payment Allonge
                                 ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**

   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

   (A) Late Charge for Overdue Payments

   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four and 000/1000** percent ( **4.000** %) of the overdue amount of each payment.

FHA Multistate Note - 10/95
1103.CV (10/08)    0515247

Page 1 of 2

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

The undersigned borrower(s) receipt of a copy of this instrument.

_Tonnie Nichols_ 10-08-08 (SEAL)
Borrower  Tonnie Nichols

_Boris Nichols_ 10-08-08 (SEAL)
Borrower  Boris Nichols

_____ (SEAL)
Borrower

_____ (SEAL)
Borrower

_____ (SEAL)
Borrower

_____ (SEAL)
Borrower

Pay to the order of
Without Recourse
U.S. Bank N.A.
_[signature]_
Teresa Buiver
Vice President

Without Recourse, pay to the order of
**U.S. BANK N.A.**

First Mortgage Company, L.L.C. an Oklahoma Limited Liability Co.

By _[signature]_
Kendall Basore, Co-Manager

1103.CV (10/08)   0515247                Page 2 of 2

# **EXHIBIT A-2**



Tulsa County Clerk - EARLENE WILSON
Doc # 2008106358 Page(s): 6
Recorded 10/15/2008 at 02:53 PM
Receipt # 110876 Fee $23.00

When Recorded Return To:
First Mortgage Company LLC
2504 East 71st Street
Tulsa, OK 74136

[Space Above This Line For Recording Data]

State of Oklahoma        **MORTGAGE**

FHA Case No.
M: REDACTED

THIS MORTGAGE ("Security Instrument") is given on __October 8th__, __2008__. The mortgagor is __Tonnie Nichols and Boris Nichols, wife and husband__

_____ ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
__First Mortgage Company LLC__,
which is organized and existing under the laws of __the State of Oklahoma__, and whose address is __6501 North Broadway Ste. 250 Oklahoma City, OK 73116__ ("Lender").
Borrower owes Lender the principal sum of __One Hundred Fourteen Thousand One Hundred Thirty Eight and 00/100__ Dollars (U.S. $ __114,138.00__). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on __November 1, 2038__. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in __Tulsa__ County, Oklahoma:
Lot Four (4), Block Six (6), LONGVIEW ACRES, an Addition in Tulsa County, State of Oklahoma, according to the recorded Plat thereof.

                              Mortgage Tax Certification
                DENNIS SEMLER, Tulsa County Treasurer
          Date    10/15/2008    Tax    114⁵⁰
         Deputy      JMR     Receipt    263173

which has the address of __8562 East 32nd Street__, __Tulsa__,
                                [Street]                            [City],
__OK__       __74145__             ("Property Address");
[State]        [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".
      BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

20775.CV (3/08)     0515247             Page 1 of 5

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid

20775.CV (3/08)    0515247                Page 2 of 5

under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within ___ **Sixty (60) days** ___ from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to ___ **Sixty (60) days** ___ from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice in the manner required by applicable law to Borrower and any other persons prescribed by applicable law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs unless applicable law provides otherwise.

20. **Waiver of Appraisement.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of the maximum allowed by the Secretary of HUD.

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box (es)].

- ☐ Condominium Rider
- ☐ PUD Rider
- ☒ Other [Specify] Tax Exempt Financing Rider
- ☐ Graduated Payment Rider
- ☐ Growing Equity Rider

### NOTICE TO BORROWER
A POWER OF SALE HAS BEEN GRANTED IN THIS SECURITY INSTRUMENT. A POWER OF SALE MAY ALLOW THE LENDER TO TAKE THE PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY BORROWER UNDER THIS SECURITY INSTRUMENT.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ *(signature)* _____ (Seal)
Borrower **Tonnie Nichols**

_____ *(signature)* _____ (Seal)
Borrower **Boris Nichols**

_____ (Seal)
Borrower

_____ (Seal)
Borrower

[Space Below This Line For Acknowledgement]

**STATE OF Oklahoma**        )
                             > ss:
**COUNTY OF Tulsa**          )

The foregoing instrument was acknowledged before me this ___8th___ day of ___October___, __2008__, by **Tonnie Nichols and Boris Nichols, wife and husband**

Witness my hand and official seal.

My commission expires: 08/31/2012

Notary Public **Heather Slavens**



Notary Public Oklahoma
OFFICIAL SEAL
Heather Slavens
Tulsa County
04007320 Exp. 8-31-12

20775.CV (3/08)    0515247                Page 5 of 5

## TAX-EXEMPT FINANCING RIDER

ISSUER: Oklahoma Housing Finance Agency
PROGRAM: 007
OHFA LC REDACTED

THIS TAX-EXEMPT FINANCING RIDER is made this __8th__ day of __October__, __2008__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to __First Mortgage Company LLC__

("Lender") of the same date and covering the property described in the Security Instrument and located at:

__8562 East 32nd Street Tulsa, OK 74145__

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may be separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the property as a principal resident within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that '100 percent' shall be substituted for '95 percent or more' where the latter appears in Section 143(d)(1)); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of 115% of the applicable median family income (140% of the applicable median family income for a purchaser or transferee of a residence in a targeted area), except that 100% and 120% shall be substituted for 115% and 140%, respectively, if the purchaser or other transferee has a family of fewer than 3 individuals, all as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c) Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the 1986 Internal Revenue Code in effect on the date of execution of the Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_/s/ Tonnie Nichols_   10/08/08            _/s/ Boris Nichols_   10/08/08
Borrower's Signature   Date                Co-Borrower's Signature   Date
__Tonnie Nichols__                         __Boris Nichols__
Borrower's Printed Name                    Co-Borrower's Printed Name


STATE OF OKLAHOMA   )
                    ) ss.
COUNTY OF Tulsa     )

Before me the undersigned, a Notary Public, in and for said County and State, on the __08__ day of __October__, __2008__, there personally appeared __Tonnie Nichols and Boris Nichols, wife and husband__ to me known to be in identical person who executed the within and foregoing instrument and acknowledged to me that said person(s) executed the same as said person's free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

[SEAL]                                                _/s/ Heather Slavens_
                                                      Notary Public  Heather Slavens
My Commission Expires:
08/31/2012                    Notary Public Oklahoma
                              OFFICIAL SEAL
7755.CV (8/08)   0515247      Heather Slavens
                              Tulsa County
                              04007920  Exp. 8-31-12

Revised 2007



Tulsa County Clerk - PAT KEY
Doc # 2013008665 Page(s): 1
Recorded 01/25/2013 at 11:13 AM
Receipt # 383069 Fee $13.00

KIVELL, RAYMENT AND FRANCIS, P.C.
Triad Center I, Suite 550
7666 E. 61st Street
Tulsa, OK 74133
U.S. Bank National Association

## ASSIGNMENT OF MORTGAGE

MIN: 100016200016120046                                          MERS Phone: 1-888-679-6377

**KNOW ALL MEN BY THESE PRESENTS:**

That **Mortgage Electronic Registration Systems, Inc., as nominee for First Mortgage Company, LLC, its successors and assigns,** for valuable consideration received, the receipt of which is hereby acknowledged, does hereby sell, assign, transfer, set over and convey unto **U.S. Bank National Association,** one certain mortgage executed by Tonnie Nichols and Boris Nichols, wife and husband, to Mortgage Electronic Registration Systems, Inc., as nominee for First Mortgage Company, LLC, upon the following described property, situated in the County of Tulsa, State of Oklahoma, to-wit:

**Lot Four (4), Block Six (6), LONGVIEW ACRES, an Addition in Tulsa County, State of Oklahoma, according to the recorded Plat thereof.**

given to secure a certain promissory note, and said mortgage duly filed for record on October 15, 2008, Document No. 2008106358, in the office of the County Clerk of Tulsa County, Oklahoma, together with the covenants contained in said mortgage.

**IN WITNESS WHEREOF,** We have hereunto set our hands and affixed our seal on this 18 day of January, 2013.

Mortgage Electronic Registration Systems, Inc., as nominee for First Mortgage Company, LLC, its successors and assigns

By: Brittany P. Brooks

Brittany P. Brooks
Name
Assistant Secretary
Title

**STATE OF KENTUCKY  )**
                                       ) ss.
**COUNTY OF DAVIESS  )**

On this 18 day of January, 2013, before me, the undersigned, a Notary Public, in and for the County and State aforesaid, personally appeared Brittany P. Brooks to me known to be the identical person who subscribed the name of the maker to the foregoing instrument as its Assistant Secretary and acknowledged to me that Brittany P. Brooks executed the same as Assistant Secretary free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given under my hand and seal of office the day and year last above written.

NOTARY PUBLIC

My Commission Expires:

2-9-16

OFFICIAL SEAL
KRISTY C. CHANEY
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 02-09-2016
ID # 460130



KRF File #25946/JS