# EXHIBIT B

*1036563021*

IN THE DISTRICT COURT WITHIN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

U.S. BANK NATIONAL ASSOCIATION,
   Plaintiff,

vs.

TONNIE NICHOLS,
BORIS NICHOLS,
UNITED STATES OF AMERICA, EX REL
   THE SECRETARY OF HOUSING AND
   URBAN DEVELOPMENT,
FIRST FIDELITY BANK, N.A.,
STATE OF OKLAHOMA EX REL.,
   OKLAHOMA TAX COMMISSION,
JANE DOE, AS OCCUPANT OF THE
   PREMISES,
JOHN DOE, AS OCCUPANT OF THE
   PREMISES,
   Defendants.

No. _____

# CJ-2017-01957

DON NEWBERRY, Court Clerk

DISTRICT COURT
**F I L E D**

MAY 1 9 2017

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## P E T I T I O N

Comes now the Plaintiff, **U.S. BANK NATIONAL ASSOCIATION** and for its cause of action against the Defendants above named, alleges and states:

1. That the Plaintiff was at all times hereinafter mentioned, and now is duly organized, existing and authorized to bring this action.

2. That the Mortgagors, Boris Nichols and Tonnie Nichols, were married at the time they executed the mortgage sued upon, and they at all times since remained, and now are, married.

3. That the original makers, for a good and valuable consideration, made, executed and delivered to the Payee, a certain written promissory note; a true copy of said note and endorsements thereon, if any, is hereto attached, marked Exhibit "A", and made a part hereof by reference; subsequently modified by a loan modification dated January 6th, 2012, attached hereto and made a part hereof as Exhibit "C" ; subsequently modified by a loan modification dated July 12th,2016, attached hereto and made a part hereof as Exhibit "C".

BT: 113513



4. That as a part of the same transaction, and to secure the payment of said note above described and the indebtedness represented thereby, the owners of the real estate hereinafter described, made, executed and delivered to the Payee of said note, a certain real estate mortgage in writing (see Exhibit "B", attached hereto and made a part hereof by reference,) and therein and thereby mortgaged and conveyed to said mortgagee the following described real estate situated in Tulsa County, State of Oklahoma, to-wit:

> Lot Four (4), Block Six (6), Longview Acres, an Addition in Tulsa County, State of Oklahoma, according to the recorded plat thereof;

with the buildings and improvements and the appurtenances, hereditaments and all other rights thereunto appertaining or belonging, and all fixtures then or thereafter attached or used in connection with said premises. That said mortgage was duly executed and acknowledged according to law, the mortgage tax duly paid thereon, and was recorded on October 16, 2008 under instrument number 2008106358, in the office of the County Clerk of Tulsa County, Oklahoma, which mortgage and the record thereof is incorporated herein by reference as provided by law.

5. That the Plaintiff was entitled to enforce the Note prior to, and is entitled to enforce the Note at and subsequent to the filing of this Petition. That Plaintiff has complied with all of the terms, conditions precedent and provisions of said note and mortgage, and is duly empowered to bring this suit.

6. That said note and mortgage provide that if default be made in the payment of any of the monthly installments, or on failure or neglect to keep or perform any of the other conditions and covenants of the mortgage, that the entire principal sum and accrued interest, together with all other sums secured by said mortgage, shall at once become due and payable, at the option of the holder thereof, and the holder shall be entitled to foreclose said mortgage and recover the unpaid principal thereon and all expenditures of the mortgagee made thereunder, with interest thereon, and to have said premises sold and the proceeds applied to the payment of the indebtedness secured thereby, together with all legal and necessary expense and all costs.

7. That default has been made upon said note and mortgage in that the installments due on September 1, 2016, and thereafter have not been paid.

8. That preliminary to the bringing of this action, and as a necessary expense thereof, this Plaintiff caused title work to be extended and certified to date at a cost which charge is a further lien secured by the Mortgage of the Plaintiff herein sued upon.

9. That said note and mortgage provide that in case of a foreclosure of said mortgage and as often as any proceedings shall be taken to foreclose the same, the makers will pay an attorney's fee as therein provided, and that the same shall be a further charge and lien on said premises.

10. That after allowing all just credits there is due to Plaintiff on said note and mortgage the sum of:

| Reason | Amount |
|---|---|
| Unpaid Principal Balance: | $124,885.19 |
| Date of Default: | 09/01/2016 |
| Interest Due From: | 08/01/2016 |
| Interest Rate(s): | |
| October 8, 2008 - December 31, 2011 | 6.670% |
| January 1, 2012 - June 30, 2016 | 4.375% |
| July 1, 2016 | 3.875% * |

* or as adjusted by the Note and Mortgage

including all subsequent advances by Plaintiff, if any, for taxes, insurance premiums, or expenses necessary for the preservation of the subject property, all costs of this action; reasonable attorney's fees and costs as the Court may allow, for which amounts said mortgage is a first, prior and superior lien upon the real estate and premises above described.

11. That the Defendant, Tonnie Nichols, is a present record owner of the subject property and is obligated on the Note thereon.

12. That the Defendant, Boris Nichols, is a present record owner of the subject property and is obligated on the Note thereon.

13. That the Defendant, United States of America, ex rel The Secretary of Housing and Urban Development, may claim some right, title lien, estate, encumbrance, claim, assessment, or interest in and to the real property involved herein, by virtue of the following mortgages: Filed January 16, 2015 recorded under Document No. 2015003747 executed by Tonnie Nichols and Boris Nichols, wife and husband, in the principal sum of $25,013.67, Filed August 23, 2016 recorded under Document No. 2016078316 executed by Tonnie Nichols and Boris Nichols, wife and husband, in the principal sum of $14,285.52.

14. That the Defendant, First Fidelity Bank, N.A., may claim some right, title lien, estate, encumbrance, claim, assessment, or interest in and to the real property involved herein, by virtue of Statement of Judgment, Case No. CS-2012-05182 filed September 12, 2012 recorded under Document No. 2012089701.

15. That the Defendant, State of Oklahoma ex rel., Oklahoma Tax Commission, may claim some right, title lien, estate, encumbrance, claim, assessment, or interest in and to the real property involved herein, by virtue of the following Tax Warrants: No. 1141784576 filed April 1, 2016 recorded under Document No. 2016029370, No. 2107727872 filed January 18, 2017 recorded under Document No. 2017005334.

16. That the Defendant, Jane Doe, as occupant of the premises, may claim some right, title lien, estate, encumbrance, claim, assessment, or interest in and to the real property involved herein, by virtue of any interest she may have in the subject property.

17. That the Defendant, John Doe, as occupant of the premises, may claim some right, title lien, estate, encumbrance, claim, assessment, or interest in and to the real property involved herein, by virtue of any interest he may have in the subject property.

Plaintiff prays the said Defendants be summoned in this case and be required to set up in this suit any right, title or interest claimed in and to the lands involved in this action or be forever barred from claiming any right in and to the said real estate.

Plaintiff states, however, that any right, title, or interest claimed by each Defendant, is subordinate and inferior to the mortgage lien claimed by the Plaintiff, and Plaintiff prays the said Defendant, be summoned in this case and be required to set up in this suit any right, title or interest claimed in and to the lands involved in this action or be forever barred from claiming any right in and to the said real estate.

WHEREFORE, Plaintiff prays for judgment *in personam* against the Defendants, Tonnie Nichols and Boris Nichols, and each of them, in the sum listed above in paragraph 10.

And for a further judgment *in rem* against all said Defendants adjudging:

That all of said Defendants be required to appear and set forth any right, title, claim or interest which they have, or may have, in and to said real estate and premises; and,

That said mortgage be foreclosed and that the same be declared a valid first, prior and superior lien upon the real estate hereinbefore described, for and in the amounts above set forth, and ordering said real estate and premises sold, for cash, as provided in said mortgage and by law, subject to unpaid taxes, advancements by Plaintiff for taxes, insurance premiums, or expenses necessary for the preservation of the subject property, if any, to satisfy said judgment, and that the proceeds arising therefrom be applied to the payment of the costs herein, and the payments and satisfaction of the judgment, mortgage and lien of this Plaintiff, and that the surplus, if any, be paid into Court to abide the further order of the Court; and,

That all right, title and interest of said Defendants, and each of them, if any, in and to said real estate, be adjudged subject, junior and inferior to the mortgage lien and judgment of this Plaintiff, and that upon confirmation of such sale, the Defendants herein, and each of them, and all persons claiming by, through or under them since the commencement of this action, be forever barred, foreclosed and enjoined from asserting or claiming any right, title, interest, estate or equity of redemption in or to said premises, or any part thereof; and,

That this Plaintiff have such other and further relief as may be just and equitable.

Don Timberlake - # 9021
Gary D. Baer - # 0407
Chynna Scruggs - # 32663
Kim Jenkins - # 32809
William H. Sullivan - # 8761
BAER & TIMBERLAKE, P.C.
P.O. Box 18486
Oklahoma City, OK 73154-0486
Telephone:    (405) 842-7722
Facsimile:    (405) 848-9349

don@baer-timberlake.com

BT: 113513                                    5                                    Petition

COUNTY OF OKLAHOMA

ss.

STATE OF OKLAHOMA

I state under penalty of perjury on this 15th day of May, 2017, under the laws of Oklahoma that the foregoing is true and correct.

Date: _____S-15 17_____

_____

Don Timberlake - # 9021
Gary D. Baer - # 0407
Chynna Scruggs - # 32663
Kim Jenkins - # 32809
William H. Sullivan - # 8761
BAER & TIMBERLAKE, P.C.
P.O. Box 18486
Oklahoma City, OK 73154-0486
Telephone:     (405) 842-7722
Facsimile:     (405) 848-9349

don@baer-timberlake.com

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**U.S. BANK NATIONAL ASSOCIATION, Plaintiff**
**vs.**
**Tonnie Nichols, et al., Defendant(s).**

**Tulsa County, Oklahoma**
**Petition**

**Exhibit A**

FHA Case No. REDACTED

__October 8, 2008__        **NOTE**       MIN
[Date]

8562 East 32nd Street  Tulsa, OK  74145
[Property Address]

**1.  PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **First Mortgage Company LLC , an Oklahoma Limited Liability Co.**

and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Fourteen Thousand One Hundred Thirty Eight and 00/100** Dollars (U.S. $ **114,138.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and 670/1000** percent ( **6.670** %) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated that same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the ___1st___ day of each month beginning on ___December 1st___ , ___2008___ . Any principal and interest remaining on the ___1st___ day of ___November___ , ___2038___ , will be due on that date, which is called the "Maturity Date".

(B) Place

Payment shall be made at **6501 North Broadway  Ste. 250 Oklahoma City, OK  73116** _____ or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **734.24** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box.]
☐ Growing Equity Allonge        ☐ Graduated Payment Allonge
                                ☐ Other [specify]

**5.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the  Security Instrument,  as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due,  Lender may collect a late charge in the amount of **Four and 000/1000** percent ( **4.000** %) of the overdue amount of each payment.

FHA Multistate Note - 10/95                    Page 1 of 2
1103.CV (10/08)        0515247

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

The undersigned borrower(s) receipt of a copy of this instrument.

_Tonnie Nichols_ 10-08-08 (SEAL)
Borrower  **Tonnie Nichols**

_Boris Nichols_ 10-08-08 (SEAL)
Borrower  **Boris Nichols**

_____ (SEAL)
Borrower

_____ (SEAL)
Borrower

Pay to the order of
Without Recourse
U.S. Bank N.A.
_Teresa Buiver_
Teresa Buiver
Vice President

_____ (SEAL)
Borrower

_____ (SEAL)
Borrower

Without Recourse, pay to the order of
**U.S. BANK N.A.**

First Mortgage Company, L.L.C. an
Oklahoma Limited Liability Co.

By _Kendall B_
Kendall Basore, Co-Manager

**Exhibit B**



**Tulsa County Clerk - EARLENE WILSON**
Doc # 2008106358 Page(s): 6
Recorded 10/15/2008 at 02:53 PM
Receipt # 110878 Fee $23.00

When Recorded Return To:
First Mortgage Company LLC
2504 East 71st Street
Tulsa, OK 74136

_____   [Space Above This Line For Recording Data]   _____

State of Oklahoma

## MORTGAGE

FHA Case No.

M: REDACTED

THIS MORTGAGE ("Security Instrument") is given on _____ **October 8th** _____, **2008** . The
mortgagor is **Tonnie Nichols and Boris Nichols, wife and husband**

_____ ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. (888) 679-MERS.
**First Mortgage Company LLC**
which is organized and existing under the laws of **the State of Oklahoma** _____, and whose address is
**6501 North Broadway  Ste. 250 Oklahoma City, OK  73116** ("Lender").
Borrower owes Lender the principal sum of **One Hundred Fourteen Thousand One Hundred Thirty Eight and**
**00/100** _____ Dollars (U.S. $ **114,138.00** ). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments,
with the full debt, if not paid earlier, due and payable on _____ **November 1, 2038** _____. This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to
Lender, with power of sale, the following described property located in **Tulsa** _____ County,
Oklahoma:
**Lot Four (4), Block Six (6), LONGVIEW ACRES, an Addition in Tulsa County, State of Oklahoma,**
**according to the recorded Plat thereof.**

Mortgage Tax Certification
DENNIS SEMLER, Tulsa County Treasurer
Date   10/15/2008   Tax   114⁵⁰
Deputy   JMR   Receipt   263173

which has the address of 8562 East 32nd Street                         Tulsa
OK          74145                          [Street]                      [City],
   [State]          [Zip Code]                ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.

20775.CV (3/08)      0515247                    Page 1 of 5

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.**  All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid

under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
  (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
  (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:
  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
  (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within ___Sixty (60) days___ from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to ___Sixty (60) days___ from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.
NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice in the manner required by applicable law to Borrower and any other persons prescribed by applicable law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs unless applicable law provides otherwise.

20. **Waiver of Appraisement.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of the maximum allowed by the Secretary of HUD.

20775.CV (3/08)     0515247          Page 4 of 5

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box (es)].

☐ Condominium Rider      ☐ Graduated Payment Rider
☐ PUD Rider      ☐ Growing Equity Rider
☒ Other [Specify] **Tax Exempt Financing Rider**

## NOTICE TO BORROWER

**A POWER OF SALE HAS BEEN GRANTED IN THIS SECURITY INSTRUMENT. A POWER OF SALE MAY ALLOW THE LENDER TO TAKE THE PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY BORROWER UNDER THIS SECURITY INSTRUMENT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                   Borrower **Tonnie Nichols**

_____   _____ (Seal)
                                   Borrower **Boris Nichols**

                            _____ (Seal)
                                   Borrower

                            _____ (Seal)
                                   Borrower

_____   [Space Below This Line For Acknowledgement]   _____

STATE OF Oklahoma          )
                          > ss:
COUNTY OF Tulsa         )

The foregoing instrument was acknowledged before me this ___8th___ day of ___October___, __2008__, by **Tonnie Nichols and Boris Nichols, wife and husband**

Witness my hand and official seal.

My commission expires: **08/31/2012**

                               Notary Public **Heather Slavens**



20775.CV (3/08)     0515247          Page 5 of 5

## TAX-EXEMPT FINANCING RIDER

ISSUER: Oklahoma Housing Finance Agency

PROGRAM: 807

OHFA LOAN #: REDACTED

THIS TAX-EXEMPT FINANCING RIDER is made this __8th__ day of __October__, __2008__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to __First Mortgage Company LLC__

("Lender") of the same date and covering the property described in the Security Instrument and located at:

__8562 East 32nd Street Tulsa, OK 74145__.

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may be separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a)   All or part of the Property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower to a purchaser or other transferee:

(i)   who cannot reasonably be expected to occupy the property as a principal resident within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii)   who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that '100 percent' shall be substituted for '95 percent or more' where the latter appears in Section 143(d)(1)); or

(iii)   at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv)   who has a gross family income in excess of 115% of the applicable median family income (140% of the applicable median family income for a purchaser or transferee of a residence in a targeted area), except that 100% and 120% shall be substituted for 115% and 140%, respectively, if the purchaser or other transferee has a family of fewer than 3 individuals, all as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

(b)   Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c)   Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the 1986 Internal Revenue Code in effect on the date of execution of the Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_Tonnie Nichols_                    10/08/08           _Boris Nichols_                    10/08/08
Borrower's Signature                Date               Co-Borrower's Signature            Date

__Tonnie Nichols__                                     __Boris Nichols__
Borrower's Printed Name                                Co-Borrower's Printed Name


STATE OF OKLAHOMA       ]
                        ]  ss.
COUNTY OF __Tulsa__     ]

Before me the undersigned, a Notary Public, in and for said County and State, on the __08__ day of __October__, __2008__, there personally appeared __Tonnie Nichols and Boris Nichols, wife and husband__ to me known to be in identical person who executed the within and foregoing instrument and acknowledged to me that said person(s) executed the same as said person's free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and seal the day and year last above written.

[SEAL]

_Heather Slavens_
Notary Public   Heather Slavens

My Commission Expires:
__08/31/2012__

7755.CV (8/08)        0515247

[Notary seal: Notary Public Oklahoma OFFICIAL SEAL Heather Slavens Tulsa County 04007920 Exp. 8-31-12]

Revised 2007

**Exhibit C**



Tulsa County Clerk - EARLENE WILSON                    **** Electronically Filed Document ****        Tulsa County Treasurer - DENNIS SEMLER
Doc # 2012032215 Page(s): 5 Recorded 04/04/2012 at 12:29 PM.                                          Mortgage Tax: $17.40    Deputy: DSHAFE
Receipt # 328768 Fee $21.00                                                                          Receipt # 348755 04/04/2012 at 12:21 PM

This Document Prepared By:
SAUNDRA  GIBSON
US BANK, NA
17500 ROCKSIDE RD
BEDFORD, OH 44146

When Recorded Mail To:
FIRST AMERICAN TITLE
ATTN: LMTS
P.O. BOX 27670
SANTA ANA, CA  92799-7670

REDACTED

Tax/Parcel N:                                                                                                        REDACTED
_____ [Space Above This Line for Recording Data] _____ REDACTED
Original Principal Amount: $114,138.00                                      FHA/VA Case No:
Unpaid Principal Amount: $123,876.42                                        Loan No:
New Principal Amount $131,551.04
New Money (Cap): $7,674.62

## LOAN MODIFICATION AGREEMENT

    This Loan Modification Agreement ("Agreement"), made this 6TH day of JANUARY, 2012, between TONNIE NICHOLS AND  BORIS NICHOLS,  WIFE AND HUSBAND ("Borrower"), whose address is 8562 E 32ND ST, TULSA, OKLAHOMA 74145 and US BANK, NA ("Lender"), whose address is 17500 ROCKSIDE RD,  BEDFORD, OH 44146 amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated OCTOBER 8, 2008 and recorded on OCTOBER 15, 2008 in INSTRUMENT NO. 2008106358, TULSA COUNTY, OKLAHOMA, and (2) the Note, in the original principal amount of U.S. $114,138.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
8562 E 32ND ST, TULSA, OKLAHOMA 74145

the real property described is located in TULSA COUNTY, OKLAHOMA and being set forth as follows:

HUD Modification Agreement 10142011_45
First American Mortgage Services                            Page 1                              REDACTED

245

Doc # 2012032215 Page: 2 of 5

THE FOLLOWING DESCRIBED REAL ESTATE SITUATED IN THE COUNTY OF TULSA, STATE OF OKLAHOMA, TO-WIT: LOT FOUR (4), BLOCK SIX (6), LONGVIEW ACRES, AN ADDITION IN TULSA COUNTY, STATE OF OKLAHOMA, ACCORDING TO THE RECORDED PLAT THEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, JANUARY 1, 2012 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $131,551.04, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. $7,674.62 and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.3750%, from JANUARY 1, 2012. The Borrower promises to make monthly payments of principal and interest of U.S. $656.81, beginning on the 1ST day of FEBRUARY, 2012, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on JANUARY 1, 2042 (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the

HUD Modification Agreement 10142011_45
• First American Mortgage Services                          Page 2                          REDACTED

246



Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

REDACTED

HUD Modification Agreement 10142011_45
First American Mortgage Services                          Page 3

Doc # 2012032215 Page: 4 of 5

In Witness Whereof, the Lender have executed this Agreement.

US BANK, NA

By DANA KOZAK                    (print name)              Date
Assistant Vice President         (title)

_____[Space Below This Line for Acknowledgments]_____

LENDER ACKNOWLEDGMENT

State of ____Ohio____

County of ____Cuyahoga____

The foregoing instrument was acknowledged before me this ____01-18-12____
(date) by DANA KOZAK, the ASSISTANT VICE PRESIDENT of US BANK, NA, a
_____, corporation, on behalf of the corporation

(Signature of person taking acknowledgment)

Notary Public
(Title or rank)

LISA M. RHODES
Notary Public, State of Ohio
My Commission Expires 10-29-2012

_____
(Serial Number, if any)

This instrument was prepared by:
US BANK, NA
17500 ROCKSIDE RD
BEDFORD, OH 44146

HUD Modification Agreement 10142011_45
First American Mortgage Services                Page 4              REDACTED

Doc # 2012032215 Page: 5 of 5

In Witness Whereof, I have executed this Agreement.

_Tonnie Smith_ (Seal)                    _Boris Nichols_ (Seal)
Borrower                                  Borrower
TONNIE NICHOLS                            BORIS NICHOLS
01/11/12                                  01/12/12  B.N.
Date                                      Date

_____ (Seal)                    _____ (Seal)
Borrower                                  Borrower

_____                           _____
Date                                      Date

_____ (Seal)                    _____ (Seal)
Borrower                                  Borrower

_____                           _____
Date                                      Date

[Space Below This Line for Acknowledgments]

### BORROWER ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _Tulsa_

The foregoing instrument was acknowledged before me this _1 / 11 / 2012_ by
**TONNIE NICHOLS, BORIS NICHOLS**

Signature of Person Taking Acknowledgment _____

Printed Name _Adam Bennett_

Title or Rank _Branch Manager_

Commission expires _09/06/13_

Serial Number, if any _0508308_

HUD Modification Agreement 10142011_45
First American Mortgage Services                    Page 5                    REDACTED

239

**** Electronically Filed Document ****

TULSA COUNTY CLERK - PAT KEY
Doc # 2016076040  Page(s): 6 Recorded 08/16/2016 12:05:35 PM
Receipt # 16-45524 Fees: $23.00

TULSA COUNTY TREASURER - DENNIS SEMLER
Mortgage Tax: $18.87 Deputy: GWEN BARTLESON
Receipt # 448662 08/16/2016 11:00:09 AM

This Document Prepared By:
CRISTIN MILLAY
U.S. BANK N.A.
4801 FREDERICA ST
OWENSBORO, KY 42301
(800) 365-7772

Requested By and
When Recorded Return To:
  Loan Modification Solutions
  3220 El Camino Real
  Irvine, CA  92602
  (800) 323-0165

Tax/Parcel #: REDACTED

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $114,138.00
Unpaid Principal Amount: $120,477.64
New Principal Amount: $125,069.44
New Money (Cap): $18,877.32

FHA\VA Case No.
Loan No:    REDACTED
            REDACTED

REDACTED

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Loan Modification Agreement ("Agreement"), made this 12TH day of JULY, 2016, between TONNIE NICHOLS AND BORIS NICHOLS, WIFE AND HUSBAND WITH THE RIGHT OF SURVIVORSHIP ("Borrower") whose address is 8562 E 32ND ST, TULSA, OKLAHOMA 74145 and U.S. BANK N.A. ("Lender"), whose address is 4801 FREDERICA ST, OWENSBORO, KY 42301, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated OCTOBER 8, 2008 and recorded on OCTOBER 15, 2008 in INSTRUMENT NO. 2008106358, of the OFFICIAL Records of TULSA COUNTY, OKLAHOMA, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

8562 E 32ND ST, TULSA, OKLAHOMA 74145
(Property Address)

REDACTED

HUD-HAMP 10052015_356

Page 1

Doc #2016076040    Page 2 of 6

the real property described being set forth as follows:

LOT FOUR (4), BLOCK SIX(6), LONGVIEW ACRES, AN ADDITION IN TULSA COUNTY, STATE OF OKLAHOMA, ACCORDING TO THE RECORDED PLAT THEREOF.

SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of, JULY 1, 2016 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $125,069.44, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. $18,877.32 and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.8750%, from JULY 1, 2016. Borrower promises to make monthly payments of principal and interest of U.S. $ 588.12, beginning on the 1ST day of AUGUST, 2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.8750% will remain in effect until principal and interest are paid in full. If on JULY 1, 2046 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

HUD-HAMP 10052015_356                    Page 2                    REDACTED

Doc #2016076040   Page 3 of 6

   (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.   Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

HUD-HAMP 10052015_356

Page 3

REDACTED

Doc.#2016076040     Page 4 of 6

In Witness Whereof, I have executed this agreement.

Borrower: TONNIE NICHOLS                                     Date  7-19-16

Borrower: BORIS NICHOLS                                      Date  07-19-16

Borrower:                                                    Date

Borrower:                                                    Date

_____ [Space Below This Line for Acknowledgments] _____

BORROWER ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF Tulsa

The instrument was acknowledged before me this  7/19/16                by
TONNIE NICHOLS, BORIS NICHOLS

Notary Public

Printed Name: Christy Mose

My Commission expires:
12-18-2019

CHRISTY L. MOSE
Notary Public in and for the
State of Oklahoma
Commission #15011351
My Commission Exp. 12-18-2019

REDACTED

HUD-HAMP 10052015_256                    Page 4

Doc #20:6076040    Page 5 of 6

In Witness Whereof, the Lender has executed this Agreement.

U.S. BANK N.A.

_Rachel M. Fulks_____    _8/8/16_
By Rachel M. Fulks                (print name)    Date
Mortgage Document Officer        (title)
                                    [Space Below This Line for Acknowledgments] _____

STATE OF KENTUCKY
COUNTY OF DAVIESS

The foregoing instrument was acknowledged before me this _8-8-16_ by

RACHEL M. FULKS , the MORTGAGE DOCUMENT OFFICER of U.S. BANK N.A., a national

association, on behalf of said national association.

_Jackie Gentry_____
Notary Public

Printed Name: _Jackie Gentry_
My commission expires: _6-5-2018_

OFFICIAL SEAL
JACKIE GENTRY
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 06-05-2018
ID # 517705

HUD-HAMP 10052015_356                    Page 5                    REDACTED

26

Doc #2016076040     Page 6 of 6

EXHIBIT B
MORTGAGE SCHEDULE

Mortgage made by TONNIE NICHOLS AND BORIS NICHOLS, WIFE AND HUSBAND WITH THE RIGHT OF SURVIVORSHIP to MERS, INC., AS NOMINEE FOR FIRST MORTGAGE COMPANY LLC for $114,138.00 and interest, dated OCTOBER 8, 2008 and recorded on OCTOBER 15, 2008 in INSTRUMENT NO. 2008106358.
  Loan Modification Agreement made by TONNIE NICHOLS, BORIS NICHOLS WIFE AND HUSBAND to US BANK, NA dated JANUARY 6, 2012 and recorded on APRIL 4, 2012 in INSTRUMENT NO. 348755. Modified amount is now $131,551.04. Mortgage tax paid: $0.00..

This mortgage was assigned from MERS, INC., AS NOMINEE FOR FIRST MORTGAGE COMPANY LLC (assignor), to U.S. BANK NATIONAL ASSOCIATION (assignee), by assignment of mortgage dated JANUARY 18, 2013 and recorded on JANUARY 25, 2013 in INSTRUMENT NO. 2013008665.

HUD-HAMP 10052015_356

Page 6

REDACTED

26